IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TERRY CROSBY, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BYLAND TRANSPORTATION LLC,<br><br>Defendant. | CLASS ACTION COMPLAINT<br><br>JURY DEMANDED |

**CLASS ACTION COMPLAINT**

Plaintiff Terry Crosby brings this case individually and on behalf of others similarly situated against Defendant Byland Transportation LLC ("Byland") for breach of contract and violations of the Truth in Leasing Act ("TILA"), 49 U.S.C. § 14704(a)(2). Plaintiff brings his claims as a putative class action.

**NATURE OF THE CASE**

1. Defendant engaged in a widespread scheme to violate its lease agreements with owner-operators in order to steal part of owner-operators' compensation.

2. Defendant Byland is a federally licensed motor carrier that enters into contracts with owner-operators to use their semi-trucks, with or without a driver, to transport goods under its motor carrier license. Plaintiff and other drivers worked for Defendant as owner-operators.

**Parties**

3. Plaintiff Terry Crosby, a Louisiana resident, is an interstate truck driver. He has a CDL Class A license and worked for Defendant as an owner-operator from May to September

2022. During all times that Crosby worked for Defendant, he was not an agent of Defendant for the purposes of the TILA.

4. Defendant Byland is an Illinois business corporation with principal place of business in Downers Grove, Illinois. Byland is a federally regulated motor carrier providing transportation services to the shipping public and is an "authorized carrier" within the meaning of 49 C.F.R. § 376.2(a).

5. Byland employs or contracts with drivers to transport its customers' freight in interstate commerce. As part of its business, Byland leases equipment from other related entities or owner-operators.

6. Byland is registered under MC-923239, US DOT # 2725675. According to the SAFER – FMCSA management information systems, Byland reported that it operates 57 power units (semi-trucks) and 50 drivers. Further, Byland reported that it ran approximately 3.2 million miles in 2021.

## Jurisdiction and Venue

7. The Court has subject matter jurisdiction over this action pursuant to the TILA, 49 U.S.C. § 14704 and 28 U.S.C. § 1331.

8. Venue is proper in this jurisdiction under 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(a), (b), and (c) because a substantial part of the events and omissions giving rise to this action occurred in the Northern District of Illinois.

## TILA Legal Standards

9. The TILA and its implementing regulations govern the terms and conditions under which owner-operator truckers lease equipment to federally authorized motor carriers that transport freight in interstate commerce. *See* 49 U.S.C. § 14102(a); 49 C.F.R. § 376.12. TILA

regulations require the motor carrier's equipment leases to disclose, in writing, the amount that the motor carrier will pay the owner-operator as compensation. 49 C.F.R. § 376.12(d). The regulations also require that those leases disclose the details of any escrow withholdings and charge back items. *Id*. at § 376.12 (h), (k). When the lessor's revenue is based on a percentage of the gross revenue for a shipment, the lease must specify that the carrier will provide the lessor a copy of the rated freight bill, or any other documentation actually used for a shipment containing the same information, before or at the time of settlement. *Id*. at 376.12(g). Finally, the regulations require the motor carrier to adhere to the terms of the lease. *Id.* § 376.12 (introductory paragraph).

**Common Facts**

10. Plaintiff entered into an independent contract agreement (hereinafter "Lease Agreement") with Defendant to transport good in interstate commerce under Defendant's carrier license.

11. The Lease Agreement constituted a "lease" under the TILA. 49 C.F.R. §376.2(e).

12. Under the Lease Agreement, Defendant agreed to pay Crosby 80% of the gross revenue payable for each load that Crosby hauled with his equipment under Defendant's carrier license. Ex. A, Lease Agreement, Addendum B.

13. TILA regulations required Defendant to make certain disclosures to Plaintiff regarding his compensation and deductions from his pay. 49 C.F.R. § 376.12. Specifically, Defendant was required to provide Plaintiff with the original brokers' rate confirmation sheets for each load he hauled at or before the time of settlement (pay). *Id.* at § 376.12(g).

14. Defendant refused to provide Plaintiff with rate confirmation sheets at or before the time of settlement. Instead, Defendant communicated the price of the load directly to Plaintiff by phone, text, or email.

3

15. Defendant lied and under-reported the load rates (or prices) in its communications with Plaintiff and in Plaintiff's settlement (pay) statements.

16. On September 7, 2022, after Plaintiff terminated his contract with Defendant, Plaintiff, through counsel, sent Defendant a letter demanding the original brokers' rate confirmation sheets.

17. On September 16, 2022, Defendant emailed Plaintiff's counsel copies of what it claimed to be the original brokers' rate confirmation sheets for loads that Plaintiff hauled with his equipment.

18. Plaintiff and his counsel then called some of the brokers to confirm the prices of the loads. Certain of the brokers reported higher load rates than those listed on the confirmation sheets Defendant provided to Plaintiff's counsel.

19. Defendant altered the confirmation sheets before sending them to Plaintiff's counsel in order to make it appear that the price on the rate confirmation sheets matched the amount that it previously quoted to Plaintiff before he delivered the load.

20. Plaintiff's counsel informed Defendant that he knew the confirmation sheets had been secretly altered and demanded that Defendant produced the original, unaltered, rate confirmation sheets.

21. On October 7, 2022, Defendant's counsel produced the original, unaltered rate confirmation sheets. The prices on the unaltered rate confirmation sheets were higher than the prices on the fake rate confirmation sheets Defendant produced on September 16, 2022.

22. For example, Defendant sent Plaintiff a secretly altered rate confirmation sheet between Byland and Dart Advantage logistics. The altered rate confirmation sheet stated that the load price was $2,700. The later-produced original rate confirmation sheet stated that the load

price was $2,800. Ex. B, Dart Load Confirmation Sheets. Defendant lied to Plaintiff when it originally reported the rate of the load and paid him only a percentage of the lower, falsified rate.

23. Defendant also sent Plaintiff a secretly altered rate confirmation between Byland and Arrive Logistics. The load price on the secretly altered rate confirmation sheet is $1,900. The actual load price on the original rate confirmation sheet is $1,950. Ex. C, Arrive Load Confirmation Sheets. Defendant lied to Plaintiff when it originally reported the rate of the load and paid him only a percentage of the lower rate.

24. Defendant sent Plaintiff a secretly altered rate confirmation between Byland and Uber Freight. The load price on the secretly altered rate confirmation sheet is $1,775. The actual load price on the original rate confirmation sheet is $1,900. Ex. D, Uber Load Confirmation Sheets. Defendant lied to Plaintiff when it originally reported the rate of the load and paid him a percentage of the lower, falsified rate.

25. Defendant violated the TILA rules by not adhering to the terms of its lease agreement with Plaintiff. 49 C.F.R. § 376.12 (intro paragraph).

26. During the past five years alone, Defendant has contracted with at least one-hundred lessor/owner-operators to provide transportation service for its clients.

27. On information and belief, Defendant entered substantively identical lease agreements with at least one-hundred drivers promising to pay them 80% of the load price.

28. On information and belief, Defendant had a company policy of under-reporting the price of the load to all owner-operators with whom it contracted and paying them 80% of the lower, under-reported rate.

## Class Allegations

29. Plaintiff brings this action on behalf of himself and a class of similarly situated individuals or entities, defined as:

> All individuals or entities that contracted with Defendant as lessors/owner operators from October 28, 2012 to the present and that were paid based on a percentage of the load rate.

30. The Class defined above satisfies the requirements of Rules 23(a) and 23(g).

   a. **Numerosity.** The Class is so numerous that joinder of all members is impracticable, and the disposition of their claims in a class action will provide substantial benefits to both the parties and the Court. Since 2012, Defendant has contracted with approximately 100 owner-operator drivers and paid them based on a percentage of the load.

   b. **Commonality.** Common questions of law and fact predominate over individual issues affecting only individual class members. Questions of law and fact common to the Class include, among others, the following:

      i. Whether Defendant violated the TILA by refusing to provide owner-operators with the original brokers' rate confirmation sheets at or before the time of settlement;

      ii. Whether Defendant breached the terms of their agreements with owner-operator drivers by paying them less than the promised percentage of gross receipts on each load;

   c. **Typicality**. Plaintiff's claims are typical of the Class's claims because Plaintiff and all Class members were injured through Defendant's uniform misconduct. The claims of Plaintiff and the Class arise from the same operative facts and are based upon the same legal theories. There are no defenses unique to Plaintiff.

    d. **Adequacy.** Plaintiff will fairly and adequately protect and represent the interests the Class because (i) Plaintiff has retained competent and experienced counsel that have the time, experience, and resources to litigate this case; (ii) Plaintiff is a member of the Class, his claims are typical of the Class, and he has suffered substantially similar injuries to those suffered by the rest of the Class; (iii) Plaintiff's interest in obtaining monetary relief for the Class are consistent with and not antagonistic to the interests of the Class.

31. The proposed Class satisfies the requirements of Fed. R. Civ. P. 23(b)(3).

    a. **Predominance**. Common questions predominate over any individual questions because the important and prevalent issues in this case concern Defendant's conduct and its effects, which are common to the Class. Individual issues are minor and may be nothing more than damages calculations pursuant to a formula.

    b. **Superiority**. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages suffered by Plaintiff and the Class, while collectively substantial, are relatively small per Class member compared to the burden and expense required to individually litigate their claims. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a

single court. Both liability and damages can be determined in one class-wide proceeding.

## Count I - Breach of Contract

32. Plaintiff incorporates all prior allegations as if fully stated herein.

33. Defendant entered into Lease Agreements with Plaintiff and the Class agreeing to pay 80% of the gross revenue of the loads they hauled for Defendant. Ex. A, Addendum. B.

34. On information and belief, Defendant entered into a substantially similar Lease Agreement with all the Class members.

35. Plaintiff and the Class members substantially performed all their obligations under their contracts with the Defendant.

36. Defendant breached its contracts with Plaintiff and the Class members by not paying them 80% of the real rate that brokers or shippers paid to Defendant.

37. Defendant was the only party to the Lease Agreements that knew the actual price shipper paid for each load.

38. Defendant violated the covenant of good faith and fair dealing by under-reporting the price of the loads that Plaintiff hauled and then paying Plaintiff 80% of the lower, under-reported amount.

## Count II - Truth in Leasing Act

39. Plaintiff incorporates all prior allegations as if fully stated herein.

40. Defendant is a motor carrier licensed with the U.S. Department of Transportation.

41. Under the TILA regulations, an authorized carrier may perform authorized transportation in leased equipment only if the written lease granting the use of the equipment meets the requirements of 49 C.F.R. § 376.12.

42. Under the regulations, the required lease provisions must be "adhered to and performed by the authorized carrier." *Id.* § 376.12 (introductory paragraph). The TILA also requires that leases disclose all "chargebacks" or deductions from an owner-operator's compensation, *id*. § 376.12(h), and that carriers provide copies of the rated freight bill to owner-operators who are paid a percentage of the price of the load at or before the time of settlement. *Id.* § 376.12(g). Finally, the regulations require the carrier to adhere to the terms of the lease. *Id.* § 376.12 (intro paragraph).

43. Defendant entered into Lease Agreements with Plaintiff and the Class agreeing to pay them 80% of the gross revenue of loads they hauled under Defendant's carrier license.

44. The Lease Agreement constituted a lease under the TILA. *Id*. § 376.2(e).

45. Defendant refused to provide Plaintiff with copies of the rated freight bill or any form of documentation actually used for a shipment containing the same information that would appear on a rated freight bill at or before the time of settlement. *Id*. § 376.12(g). The failure to disclose the rated freight bill prevented Plaintiff from contesting the underpayment.

46. When Defendant did provide Plaintiff with copies of the rate freight bill upon receiving a demand letter from Plaintiff's counsel, Defendant altered the rated freight bills to hide the fact that it underpaid Plaintiff.

47. Defendant did not adhere to the terms of the Lease Agreements because it paid Plaintiff and the Class less than the percentage of the load rate it promised.

48. Under 49 U.S.C. §14704(a)(2), Defendant is liable to Plaintiff and the Class for the damages that they suffered on account of Defendant's regulatory violations.

## **Prayer for Relief**

Plaintiff, individually and on behalf of the Class, respectfully prays for the following relief:

a. An order certifying the Class as defined above, appointing Plaintiff as Class representative, and appointing Plaintiff's counsel as Class Counsel;

b. An award of all economic, monetary, actual, consequential, and compensatory, damages available under the law;

c. An award of restitution and disgorgement;

d. An award of all equitable relief requested herein;

e. An award of reasonable litigation expenses and attorneys' fees;

f. An award of pre- and post-judgment interest, to the extent allowable; and

g. Other further relief that the Court deems just and reasonable.

## **Jury Demand**

Plaintiff demands trial by jury on all issues as to which a jury trial is available.


Date: October 28, 2022               Respectfully submitted,

                                     /s/ Christopher J. Wilmes
                                       One of the Attorneys for the Plaintiff


Christopher J. Wilmes
cwilmes@hsplegal.com
Emily R. Brown
ebrown@hsplegal.com
Hughes Socol Piers Resnick & Dym
70 W. Madison St., Ste. 4000
Chicago, IL 60602
(312) 580-0100